UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DEMORA T. HOLLAND,

                Plaintiff,

v.                                                                              5:14-CV-1327
                                                                                     (GTS)
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

APPEARANCES:                                                OF COUNSEL:

LAW OFFICES OF STEVEN R. DOLSON            STEVEN R. DOLSON, ESQ.
  Counsel for Plaintiff
126 North Salina Street, Suite 3B
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.                      AMANDA J. LOCKSHIN, ESQ.
OFFICE OF REG'L GEN. COUNSEL                  MICHELLE L. CHRIST, ESQ.
 – REGION II                                                       SUSAN J. REISS, ESQ.
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

# DECISION and ORDER

       Currently before the Court, in this Social Security action filed by Demora T. Holland ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 11, 15.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied and Defendant's motion for judgment on the pleadings is granted.

I.      RELEVANT BACKGROUND

   A.      Factual Background

Plaintiff was born on November 25, 1979. She completed the 11th grade and has specialized job training as a certified nursing assistant. Plaintiff has worked as a nursing assistant and a home health aide. (T. 18.) Generally, Plaintiff's alleged disability consists of cervical and lumbar disc herniation, planter faciitis, obesity, short-term memory deficits, and difficulty concentrating and learning new material. Plaintiff's alleged disability onset date is September 17, 2010, and her date last insured is March 31, 2013.

   B.      Procedural History

On June 15, 2011, Plaintiff applied for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Plaintiff's application was denied on September 21, 2011, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). On February 20, 2013, Plaintiff appeared in a video hearing before the ALJ, David S. Pang. (T. 25-44.) On March 14, 2013, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 6-24.) On September 11, 2014, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-4.) Thereafter, Plaintiff timely sought judicial review in this Court.

   C.      The ALJ's Decision

Generally, in his decision, the ALJ made the following six findings of fact and conclusions of law. (T. 6-24.) First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 17, 2010, her application date. (T. 11.) Second, the ALJ found that Plaintiff's spine disorder, plantar faciitis, obesity, depressive disorder, anxiety disorder, and panic disorder with agoraphobia are severe impairments, but that Plaintiff's thyroid nodule, high

cholesterol, hypertension, and fibromyalgia are not severe impairments. (T. 11-12.) Third, the ALJ found that Plaintiff's severe impairments, alone or in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. (T. 12.) The ALJ considered Listings 12.04 and 12.06. (T. 12-13.) Fourth, the ALJ found that Plaintiff

> has the residual functional capacity ["RFC"] to perform light work as defined in 20 C.F.R. § 416.967(b) except she would only be able to stand and walk for two hours. She would be able to frequently reach and handle. She would be able to occasionally stoop, kneel, crouch or crawl. She would be limited to simple tasks.

(T. 13.) Fifth, the ALJ found that Plaintiff is unable to perform her past relevant work as a certified nursing assistant or home health aide. (T. 18.) Sixth, and finally, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T. 18-19.)

D.     **The Parties' Briefings on Their Cross-Motions**

Plaintiff makes four arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues that the ALJ erred in assessing Plaintiff's nonexertional limitations in formulating the RFC. (Dkt. No. 11, at 3-6 [Pl.'s Mem. of Law].) Second, Plaintiff argues that the ALJ erred in weighing the medical evidence of record from Plaintiff's treating sources, Dr. Tiso, Dr. Davis, and Dr. Waltzer. (*Id.* at 7-9.) Third, Plaintiff argues that the ALJ erred in assessing her credibility. (*Id.* at 9-11.) Fourth, and finally, Plaintiff argues that the ALJ failed to reconcile a conflict between the vocational expert testimony and the Dictionary of Occupational Titles ("DOT"). (*Id.* at 11-15.)

Defendant makes five arguments in support of her motion for judgment on the pleadings. First, Defendant argues that the ALJ's RFC finding was supported by substantial evidence. (Dkt. No. 15, at 7-16 [Def.'s Mem. of Law].) Second, Defendant argues that the ALJ properly weighed

the medical evidence of record. (*Id.* at 8-15.) Third, Defendant argues that the ALJ's credibility analysis was supported by substantial evidence. (*Id.* at 13-16.) Fourth, Defendant argues that the ALJ properly found that Plaintiff could perform other work in the national economy at step five of the sequential evaluation. (*Id.* at 16-18.) Fifth, and finally, Defendant argues that the ALJ's determination that Plaintiff was not disabled during the relevant period was amply supported by the evidence of record and should be affirmed.

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord, Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.  Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial

5

gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982), *accord, McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

### III. ANALYSIS

For the ease of analysis, Plaintiff's arguments will be reorganized and renumbered below.

#### A. Whether the ALJ Erred in Assessing the Medical Evidence of Record in Determining Plaintiff's RFC

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 15, at 5-12 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

It is the duty of the ALJ to formulate a plaintiff's RFC. 20 C.F.R. §§ 404.1545, 416.945. RFC is defined as

> what an individual can still do despite his or her limitations . . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule.

*Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2).

"In assessing a claimant's RFC, the ALJ must consider all of the relevant medical and other evidence in the case record to assess the claimant's ability to meet the physical, mental, sensory

and other requirements of work." *Domm v. Colvin*, 12-CV-6640, 2013 WL 4647643, at *8 (W.D.N.Y. Aug. 29, 2013) (citing 20 C.F.R. § 404.1545[a][3]-[4]). The ALJ must consider all of the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and the plaintiff's subjective evidence of symptoms. 20 C.F.R. §§ 404.1545(b)-(e), 416.945(b)-(e). The ALJ must consider RFC assessments made by acceptable medical sources and may consider opinions from other sources, such as therapists and social workers, to show how a claimant's impairments may affect his or her ability to work. 20 C.F.R. §§ 404.1513(c)(d), 416.913(c)(d). Finally, an ALJ's RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

### i. Plaintiff's Physical RFC

The ALJ determined that Plaintiff has the physical RFC to perform light work, except that she was limited to standing and walking for two hours, frequent reaching and handling, and occasional stooping, kneeling, crouching, and crawling. (T. 13.) Plaintiff argues that the ALJ's RFC determination was not supported by "medical imaging and observations" indicating that Plaintiff had greater physical limitations. (Dkt. No. 11, at 5 [Pl.'s Mem. of Law].) However, Plaintiff does not cite an acceptable medical source opinion to support her argument that Plaintiff had greater physical limitations than those included in the ALJ's RFC. (*Id.* at 3-6.)

"The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015); *accord, Rosa v. Callahan,* 168 F.3d 72, 79 (2d Cir. 1999) ("The ALJ cannot arbitrarily substitute his own judgment for competent medical opinion.") (quoting *McBrayer v. Sec'y of Health & Human Servs.,* 712 F.2d 795, 799 [2d Cir. 1983]); *see also Balsamo v. Chater,* 142 F.3d 75, 81 (2d Cir. 1998) ("[W]hile an [ALJ] is free to resolve issues of

7

credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who [submitted an opinion to or] testified before him."); *Wagner v. Sec'y of Health & Human Servs.,* 906 F.2d 856, 862 (2d Cir. 1990) ("[A] circumstantial critique by non-physicians, however thorough or responsible, must be overwhelmingly compelling [in order to overcome a medical opinion.]").

Here, the ALJ's physical RFC determination is supported by substantial evidence, including the opinion of Plaintiff's physical capabilities provided by consultative examiner, Kalyani Ganesh, M.D. (T. 276-79.) After a full physical examination of Plaintiff on September 2, 2011, Dr. Ganesh opined that Plaintiff had no gross limitations in sitting, standing, and walking. (T. 16.) Dr. Ganesh observed that Plaintiff had a normal gait and stance, needed no help changing for the exam or getting on and off the exam table, and rose from the chair without difficulty. (T. 15.)

The ALJ's physical RFC determination is further supported by examination and treatment notes of record. For example, although Plaintiff alleged that she has numbness in her hands, the ALJ noted that a nerve conduction study yielded normal results. (T. 16.) The ALJ further noted that, although Plaintiff alleged that she cannot move her neck from side to side, a musculoskeletal examination revealed that she had full flexion of the cervical spine. (T. 14-15.) Additionally, Plaintiff's treating physicians from New York Spine and Wellness Center advised her to walk as much as possible, and to participate in acqua therapy and aerobic activity. (T. 16, 412.)

Therefore, the ALJ's physical RFC determination was supported by substantial evidence.

### ii. Plaintiff's Mental RFC

The ALJ's mental RFC determination limited Plaintiff to simple tasks. (T. 13.) Plaintiff argues that the ALJ's mental RFC did not account for the entirety of Plaintiff's mental limitations opined by State agency reviewing psychologist, V. Reddy, Ph.D., on September 20, 2011. (Dkt. No. 11, at 6-7 [Pl.'s Mem. of Law].) Specifically, Plaintiff argues that the ALJ's RFC failed to account for Dr. Reddy's opinion that Plaintiff had moderate difficulties in completing a workday or workweek without interruptions due to psychologically based symptoms, and performing at a consistent pace without an unreasonable number and length of rest periods. (*Id.* at 6.) Additionally, Plaintiff cites Dr. Reddy's opinion that Plaintiff could perform "simple work in a low contact, low stress setting," and argues that the ALJ failed to limit Plaintiff to work in a low contact, low stress setting. (*Id.*)

The Court finds that the ALJ's mental RFC finding is supported by substantial evidence, namely the opinion of Plaintiff's mental capabilities provided by consultative mental examiner, Christina Caldwell, Psy.D, on September 2, 2011. (T. 271-75.) For example, Dr. Caldwell found that Plaintiff's attention and concentration were intact, that her recent and remote memory skills were intact, and that her insight and judgement were fair. (*Id.*) The ALJ noted that Dr. Caldwell opined that Plaintiff could follow and understand simple instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, and make appropriate decisions. (T. 16-17.)

In formulating a plaintiff's RFC, an ALJ is not required to adhere strictly to the entirety of one medical source's opinion. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to

make an RFC finding that was consistent with the record as a whole."); *Zongos v. Colvin*, 12-CV-1007, 2014 WL 788791, at *9 (N.D.N.Y. Feb. 25, 2014) (finding that it was within the ALJ's discretion to afford weight to a portion of a treating physician's opinion but not to another portion).

For these reasons, the ALJ's RFC determination is supported by substantial evidence, and remand is not necessary on this basis.

### B. Whether the ALJ Erred in Weighing the Medical Evidence of Record

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 15, at 5-16 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

Under the "treating physician's rule," controlling weight is given to a plaintiff's treating physician's opinion when (1) the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) the opinion is consistent with other substantial evidence in the record, such as opinions of other medical experts. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir. 2004); *Brogan-Dawley v. Astrue*, 484 F. App'x 632, 633-34 (2d Cir. 2012). When controlling weight is not given to the opinion of a treating physician, or when assessing other medical opinions, the ALJ should consider the following factors to determine the proper weight: (1) the frequency of the examinations and the length, nature and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; and (4) whether the opinion is from a specialist. 20 C.F.R. §§ 404.927(c), 416.927(c); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000).

Plaintiff argues that the ALJ failed to weigh opinions from physicians at New York Spine and Wellness Center, Robert Tiso, M.D., and Rena Davis, M.D. (Dkt. No. 11, at 7-11 [Pl.'s Mem. of Law].)

Social Security regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of . . . [a plaintiff's] impairment(s), including . . . [a plaintiff's] symptoms, diagnosis and prognosis, what . . . [a plaintiff] can still do despite impairment(s), and . . . [a plaintiff's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).

Here, the record contains treatment notes from the physicians at New York Spine and Wellness Center, specifically, a July 19, 2011, treatment note from Dr. Davis and a May 9, 2012, treatment note from Dr. Tiso. (T. 267-69,411-13.) However, the record does not contain a full assessment of Plaintiff's abilities and restrictions from either physician. (*Id.*) The treatment notes of Dr. Tiso and Dr. Davis merely contain records of Plaintiff's symptoms and diagnoses without judgments regarding what Plaintiff can or cannot do relative to her diagnoses and symptoms. (T. 267-69, 411-13.) Accordingly, these treatment notes do not constitute medical opinions warranting the ALJ's consideration in support of a disability determination. Therefore, the ALJ did not err in evaluating the medical evidence from the physicians at New York Spine and Wellness Center**.**

Additionally, Plaintiff argues that the ALJ failed to weigh the opinion of chiropractor, James Walzer, D.C. (Dkt. No. 11, at 7-11 [Pl.'s Mem. of Law].)

The ALJ must evaluate every medical opinion of record made by an acceptable medical source. 20 C.F.R. §§ 404.1513(a), 404.1527(b), 416.1913(a), 416.927(b). A chiropractor is not an acceptable medical source under the regulations, but an ALJ may consider an opinion from a

chiropractor as an "other source" opinion to show the severity of a plaintiff's impairments and how the impairments affect her ability to work. 20 C.F.R. §§ 404.1513(a), (c)-(d), 416.913(a), (c)-(d). Here, the record contains treatment notes from Dr. Waltzer that record Plaintiff's symptoms and diagnoses. However, it does not appear that Dr. Waltzer provided a full opinion regarding what Plaintiff can or cannot do relative to her diagnoses and symptoms. 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).

In any event, an opinion from a chiropractor is not a medical opinion that is entitled to any particular weight under the regulations. 20 C.F.R. §§ 404.1513(a), 404.1527(b), 416.1913(a), 416.927(b); *Diaz v. Shalala*, 59 F.3d 307, 313 (2d Cir. 1995) ("Because the regulations do not classify chiropractors as either physicians or 'other acceptable medical sources,' chiropractors cannot provide *medical* opinions.") Accordingly, the ALJ did not err in assessing the medical evidence from Dr. Walzer.

For these reasons, the ALJ's assessment of the medical evidence of record was supported by substantial evidence. Therefore, remand is not necessary on this basis.

### C. Whether the ALJ's Credibility Analysis Was Supported by Substantial Evidence

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 15, at 13-16 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

A plaintiff's allegation of pain is "entitled to great weight where . . . it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 [2d Cir. 1992]). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise

discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Montaldo v. Astrue*, 10-CV-6163, 2012 WL 893186, at *17 (S.D.N.Y. Mar. 15 2012). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id.* Further, "[i]t is the role of the Commissioner, not the reviewing court, 'to resolve evidentiary conflicts and to appraise the credibility of witnesses,' including with respect to the severity of a claimant's symptoms." *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (quoting *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 [2d Cir. 1983]).

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that her statements regarding the

13

intensity, persistence and limiting effects of her symptoms are not fully credible. (T. 14.) In assessing Plaintiff's subjective complaints, the ALJ determined that Plaintiff's complaints are not supported by the evidence of record, including medical opinions and examination notes, as well as Plaintiff's activities of daily living and poor work history. (T. 14-17.)

First, the ALJ cited evidence from examining and treating sources that was inconsistent with Plaintiff's alleged limitations. (T. 12-17.) For example, the ALJ noted that Plaintiff's allegations of short-term memory deficits and difficulties with focusing, concentrating, and learning new materials were inconsistent with her mental status examination results. (T. 16.) The ALJ noted that consultative mental examiner, Dr. Caldwell, found that Plaintiff's attention and concentration were intact, that her recent and remote memory skills were intact, and that her insight and judgement were fair. (*Id.*) The ALJ noted that Dr. Caldwell opined that Plaintiff could follow and understand simple instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, and make appropriate decisions. (T. 16-17.)

Turning to Plaintiff's allegations of physical limitations, the ALJ noted that Plaintiff testified that she could only sit for 25 to 30 minutes, could stand about ten to 15 minutes, could walk about one block, could not reach across a table or bend at the knees repeatedly, and had pain in her lower back, right shoulder, and feet. (T. 14.) However, the ALJ noted that consultative examiner, Dr. Ganesh, opined that Plaintiff has no gross limitations in sitting, standing, and walking. (T. 16.) The ALJ noted that Dr. Ganesh observed that Plaintiff had a normal gait and stance, needed no help changing for the exam or getting on and off the exam table, and rose from the chair without difficulty. (T. 15.)

The ALJ noted that, despite Plaintiff's allegations of pain, her physicians at New York Spine and Wellness Center encouraged her to walk as much as possible and participate in acqua therapy. (T. 16.) The ALJ noted that Plaintiff alleged that she has numbness in her hands, yet a nerve conduction study yielded normal results. (*Id.*) The ALJ noted that Plaintiff alleged that she cannot move her neck from side to side, yet a musculoskeletal examination revealed that she had full flexion in the cervical spine. (T. 14-15.)

Second, the ALJ found that Plaintiff's treatment record does not support her allegations of limitations. (T. 16.) The ALJ noted that records from Plaintiff's treating therapist, Katherine Lewis, Ph.D., indicated that Plaintiff had excessive cancellations and "no shows" for scheduled appointments. (T. 17.) The ALJ found that Plaintiff's noncompliance with her mental health treatment suggests that Plaintiff's symptoms may not be as severe as alleged. (*Id.*) The ALJ discussed Plaintiff's medication and treatment for relief of her symptoms. (T. 12-17.) For example, the ALJ noted that Plaintiff testified that she took Cymbalta for her mental health issues. (T. 16.)

Third, the ALJ found that Plaintiff's activities of daily living were inconsistent with her alleged degree of disability. (T. 17.) For example, the ALJ noted that Plaintiff reported to Dr. Caldwell that she could dress, bathe, groom herself, cook and prepare food, and manage money. (*Id.*) The ALJ noted that Plaintiff reported that she drove and went shopping for groceries and toiletries. (*Id.*) The ALJ further noted that Plaintiff testified that she cared for her ill mother until October 2012, when she was able to get outside assistance. (*Id.*)

Fourth, and finally, the ALJ considered Plaintiff's work history. (T. 17.) The ALJ noted that, although Plaintiff's alleged onset date is September 17, 2010, Plaintiff has not worked since 2008. (*Id.*) The ALJ noted that Plaintiff reported to both consultative examiners that she

stopped working in her most recent position as a certified nursing assistant due to lack of work. (*Id.*)

For these reasons, the ALJ appropriately evaluated Plaintiff's credibility, and remand is not necessary on this basis.

D. **Whether the ALJ's Step Five Determination is Supported by Substantial Evidence**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 15, at 16-18 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

At step five of the sequential process, the burden shifts to the Commissioner to establish that there are a significant number of jobs in the national economy that a plaintiff can perform based on his or her RFC, age, education, and past relevant work. 20 C.F.R. §§ 404.1512(g), 404.1560(c), 416.912(g), 416.960(c); *Butts v. Barnhart,* 388 F.3d 377, 383 (2d Cir. 2004)*; Edwards v. Astrue*, 07-CV-0898, 2010 WL 3701776, at *12 (N.D.N.Y. Sept. 16, 2010). The Commissioner can usually establish that there is other work that Plaintiff can perform, by reliance on the Medical-Vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grids." *Baldwin v. Astrue*, 07-CV-6958, 2009 WL 4931363, at *20 (S.D.N.Y. Dec. 21, 2009).

When a plaintiff suffers from significant nonexertional limitations that significantly limit his employment opportunities, exclusive reliance on the Grids is inappropriate. *Baldwin*, 2009 WL 4931363, at *27 (citing *Bapp v. Bowen*, 802 F.2d 601, 605 [2d Cir. 1986]); *accord, Wanzo v. Comm'r,* 05-CV-1521, 2008 WL 3925542, *4 (N.D.N.Y. Aug. 20, 2008). "A plaintiff's range of potential employment is significantly limited when he suffers from the 'additional loss of work

capacity beyond a negligible one or, in other words, one that so narrows a [plaintiff's] possible range of work as to deprive him of a meaningful employment opportunity.'" *Baldwin*, 2009 WL 4931363, at *27 (quoting *Bapp*, 802 F.2d at 606).

When a plaintiff has both exertional and non-exertional limitations, the Medical-Vocational Guidelines "are to be used as a framework in conjunction with other evidence, such as the testimony of a vocational expert, to guide the Commissioner's decision." *Wanzo,* 2008 WL 3925542 at *4 (citing 20 C.F.R. § 404.1569a[d]; *Bapp,* 802 F.2d at 606). The Commissioner may rely on the vocational expert's testimony regarding the existence of jobs in the economy that the claimant can perform in deciding whether disability exists." *Wanzo,* 2008 WL 3925542 at *4 (citing *Butts,* 388 F.3d at 384). However, "there must be substantial record evidence to support the RFC hypothetical upon which the vocational expert based his or her opinion." *Wanzo,* 2008 WL 3925542 at *4 (citing *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 [2d Cir. 1983]) (internal quotation marks and brackets omitted).

Here, the ALJ provided a hypothetical to the vocational expert that included Plaintiff's abilities and restrictions set forth in the RFC to determine whether Plaintiff could perform other existing work in the national economy. (T. 39-41.) The vocational expert testified that Plaintiff could perform unskilled jobs that existed in significant numbers in the national economy, including the garment sorter position. (T. 19.) Plaintiff argues that the ALJ failed to reconcile a conflict between the vocational expert testimony and the DOT because the garment sorter positions is classified at light work and the RFC limited Plaintiff to standing and walking no more than two hours a day. (Dkt. No. 11, at 11-14.) [Pl.'s Mem. of Law].)

However, the ALJ's hypothetical to the vocational expert included Plaintiff's limitation to standing and walking two hours. (T. 41.) Further, the ALJ asked the vocational expert to

17

identify any discrepancies between the jobs identified and the DOT, and the vocational expert did not identify any conflicts. (T. 39-41.) Accordingly, the ALJ reasonably relied on the testimony of the vocational expert. *See McIntyre*, 758 F.3d at 152 (finding that the ALJ reasonably relied on vocational expert testimony "which was given on the basis of the expert's professional experience and clinical judgment, and which was not undermined by any evidence of the record").

Plaintiff argues that the hypothetical posed to the vocational expert did not include the RFC's limitation to frequent handling. (Dkt. No. 11, at 14 [Pl.'s Mem. of Law].) However, according to the DOT, the garment sorter position requires no more than frequent handling and therefore is consistent with the ALJ's RFC. Dictionary of Occupational Titles, Code 222.687-014, 1991 WL 672131 (4th ed., 1991).

Additionally, the ALJ determined that Plaintiff could perform unskilled, sedentary work as a bonder and a surveillance-system monitor. (T. 19.) The demands of these positions, both classified as specific vocational preparation level two, were consistent with the ALJ's RFC finding. (T. 13.) According to the DOT, the bonder position requires no climbing, stooping, kneeling, crouching or crawling, requires frequent handling and occasional reaching, and requires level two reasoning. *Id.*, Code 726.685-066, 1991 WL 679631. The surveillance-system monitor position requires no reaching, handling, climbing, stooping, kneeling, crouching, or crawling, and requires level two reasoning. *Id.*, Code 379.367-010, 1991 WL 673244.

Reviewing courts have held that jobs with DOT reasoning levels of two or three are compatible with limitations to simple and low stress work. *See Reynolds v. Comm'r*, 11-CV-0778, 2012 WL 2040510, at *6 (N.D.N.Y. June 6, 2012) (holding that a limitation to simple work does not preclude a job with a reasoning level of two or three); *Jones-Reid v. Astrue*, 934 F.

Supp. 2d 381, 408-09 (D. Conn. 2012), *aff'd,* 515 F. App'x 32 (2d Cir. 2013) (holding that reasoning levels of two and three are not inconsistent with a limitation to short, simple instructions); *Cross v. Astrue*, 08-CV-0425, 2009 WL 3790177, at *8 (N.D.N.Y. Nov. 12, 2009) (finding no error in the ALJ's conclusion that a plaintiff limited to simple, low stress, entry-level work, with no complex decision-making, could perform jobs with a reasoning level of two or three).

For these reasons, the ALJ's step five determination was supported by substantial evidence, and remand is not necessary on this basis.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 15) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **AFFIRMED**; and it is further is

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: February 5, 2016
Syracuse, New York

_____
Hon. Glenn T. Suddaby
Chief U.S. District Judge